# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| DANIEL V. F. BLOOM, | ) | Civil Action No. 7:12-cv-00093 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JOHN JABE, et al., | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Daniel V. F. Bloom, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his rights under the Eighth and Fourteenth Amendments and the Ex Post Facto Clause of the United States Constitution.[1] The defendants filed a motion for summary judgment and Bloom responded with his own motion for summary judgment, making this matter ripe for disposition. For the following reasons, I will grant defendants' motion for summary judgment, and deny Bloom's motion.[2]

## I. BACKGROUND

Bloom alleges 19 violations of the U.S. Constitution in this § 1983 action, filed on February 28, 2012. During the time periods relevant to this lawsuit, Bloom has been housed at Buckingham Correctional Center ("Buckingham"), Sussex II State Prison ("Sussex"), and Augusta Correctional Center ("Augusta").

---

[1] The named defendants in this matter are J. Jabe, Deputy Director of Operations for the Virginia Department of Corrections, L. Edmonds, Facility Unit Head of Buckingham Correctional Center, C.D. Davis, Chief of Security at Buckingham Correctional Center, K. McNeely, Disciplinary Hearings Officer at Buckingham Correctional Center, D. Everett, Facility Unit Head at Sussex II State Prison, and M. Vargo, Assistant Facility Unit head at Sussex II State Prison.

[2] Bloom also filed discovery requests on September 26, 2012, which included interrogatories, requests for the production of documents, and requests for admissions. Defendants filed a motion for a protective order in response to Bloom's discovery requests. As none of Bloom's discovery requests are relevant to the disposition of his claims, those requests will be denied as moot, and defendants' motion for a protective order will also be denied as moot.

The alleged constitutional violations in this case stem from an incident on September 9, 2009, when correctional officers at Buckingham discovered a weapon hidden behind a locker in Bloom's cell. The search was precipitated by what Bloom refers to as a "snitch note," which indicated that an anonymous prisoner had seen Bloom hide a weapon in his cell. However, Bloom claims that the weapon was planted in his cell by certain prisoners who were angry with him due to their mistaken belief that he had caused them to lose work hours. According to Bloom, the weapon was placed behind his locker in an envelope, and the note was delivered to the Chief of Security at Buckingham Correctional Center the previous day.

A hearing took place on October 13, 2009, and Bloom was convicted of the possession of a weapon and assigned a higher security risk status. On November 3, 2009 Bloom was transferred to Sussex II State Prison, which is a higher security facility. Bloom eventually appealed his conviction on December 4, 2009, and his conviction was officially expunged by Regional Director G. K. Washington on April 1, 2010.[3]

Under his "chain of causation" theory, Bloom claims that defendants' failures regarding the supervision of inmates, enforcement of prison regulations, and lack of procedural protections at his disciplinary hearing and appeal led to his wrongful conviction and his transfer to Sussex. Bloom states that life in Sussex reflected a "severe alteration" in the living conditions he experienced at Buckingham. In his Complaint, Bloom describes "deafening" noise levels, a cell light that was kept on at night, and clothes that were "soiled and non-fitting." Furthermore, Bloom states that he was not able to pursue school and work opportunities for at least 18 months

---

[3] According to the Regional Director, Bloom's conviction was expunged because Bloom's cell was accessible by other offenders prior to the discovery of the weapon. The Regional Director did not implicate any other inmate or suspect in the matter. *See* Docket No. 27-1 at 5.

2

because of his infraction, resulting in the loss of inmate pay and personal savings. Bloom also claims that he lost a considerable amount of personal property upon his arrival to the Sussex facility, and later during a search of his cell.

In late March 2010, Bloom notified defendant Vargo that he had learned of the impending expungement of his conviction, and requested a transfer out of Sussex to a Level III security facility. However, Bloom states that Vargo maintained his security status at Level IV, keeping him at Sussex until June 1, 2011, when he was finally transferred to Augusta. Bloom claims that his transfer was an "agonizing" process, during which he was "crammed into the back of a van with seven other inmates" for approximately six hours, with temperatures averaging 85-90 degrees.

Two days after his transfer, medical staff at Augusta received a call informing them that Bloom was in his cell needing medical attention. Nurse Meadows responded to Bloom's cell, where she found him sitting on the toilet, sweaty and gassy. Bloom was transferred to a wheelchair and, within minutes, vomited blood. Bloom was immediately sent to the University of Virginia Hospital for medical treatment, and returned to Augusta three days later. Bloom's medical records indicate that he was diagnosed with erosive esophagitis (damage to the esophagus from stomach acid), two ulcers near his gastroesophageal junction, and a small Mallory-Weiss tear (a tear in the mucus membrane of the lower part of the esophagus or upper part of the stomach). Bloom experienced significant blood loss during the ordeal. Bloom remains incarcerated at Augusta.

## II.    BLOOM'S EIGHTH AMENDMENT CLAIMS

Bloom now brings 19 claims stemming from these events. Regarding claims brought

under the Eight Amendment, Bloom alleges that defendants Jabe, Edmonds and Davis failed to properly supervise and/or enforce the supervision of inmate work crews at Buckingham, failed to enforce basic policies and security measures, and failed to provide adequate institutional staffing (claims 1, 3, 4, 6). Bloom also states that these defendants were aware of the practice of leaving cell doors open in the "honor pod" where he lived (even when prisoners were not present) but failed to stop it, thus exercising a deliberate indifference to his health and safety (claims 2, 5). Bloom alleges that the defendants' lack of supervision over inmate work crews and the failure to enforce basic security measures allowed the paint crew the opportunity to plant a weapon in his unsecured cell. Specifically, Bloom states that defendants Edmonds and Davis, by placing the correctional officer in charge of the paint crew instead in the "shake down" line outside the chow hall, allowed the crew to move about the prison in an unsupervised manner and plant the weapon inside his cell (claim 7). *See* Compl. at ¶¶ 65-78.

Bloom also alleges that defendant McNeely, the disciplinary hearings officer at Buckingham, violated his rights under the Eighth Amendment by failing to adhere to certain procedural protections at his disciplinary hearing (claim 12) and excluding exculpatory evidence, including refusing the testimony of certain staff witnesses Bloom had requested (claim 13). Bloom also alleges that defendant Edmonds violated plaintiff's rights under the Eighth Amendment by affirming the disciplinary hearing officer's decision on appeal, and transferring him to Sussex before the completion of the appeals process (claim 14). Plaintiff alleges that he was forced to endure "atypical and significant hardship" while housed at Sussex—at least compared to the "ordinary instances of the prison life [he] had previously experienced while at Buckingham Correctional Center" (claim 12). *See* Compl. at ¶¶ 90-103.

4

Lastly, Plaintiff alleges that defendants Everett and Vargo deliberately failed to restore his Level III security status after his institutional charge was expunged, resulting in a "longer than . . . necessary" stay at Sussex in violation of the Eight Amendment's prohibition on cruel and unusual punishment, as well as the Fourteenth Amendment's Equal Protection Clause (claim 19). *See* Compl. at ¶¶ 117-18.

### A. Legal Standard

To establish a claim for cruel and unusual punishment due to the conditions of confinement, a plaintiff must allege facts sufficient to show (1) an objectively serious deprivation of a basic human need, that is, one causing serious physical or emotional injury, and (2) that prison officials were deliberately indifferent to that need. *Farmer v. Brennan*, 511 U.S. 832, 834 (1994). To meet the first prong, plaintiff must allege facts sufficient to show that the condition complained of was a "sufficiently serious" deprivation of a basic human need. *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). In other words, plaintiff must show that the risk from the conditions of his confinement was so grave that it violated contemporary notions of decency and resulted in serious or significant physical or emotional injury. *Strickler v. Waters*, 989 F.2d 1375, 1379-81 (4th Cir. 1993). To meet the second prong, plaintiff must allege facts sufficient to show that defendants were deliberately indifferent, that is, that they knew of facts from which an inference could be drawn that a "substantial risk of serious harm," was posed to his health and safety, that they drew that inference, and then disregarded the risk posed. *Farmer*, 511 U.S. at 837; *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard."). Similarly, to prevail on a failure to protect claim, an inmate must show that he was subjected to conditions that posed a substantial

risk of serious harm, and that prison officials were aware of and disregarded that risk. *See Farmer*, 511 U.S. at 834-37.

## B. Discussion

None of Bloom's claims state a violation of the Eighth Amendment. For starters, Bloom fails to state a claim against defendants Jabe, Edmonds, and Davis for failing to properly supervise and/or enforce basic policies and security measures because supervisory liability under § 1983 may not be predicated on the theory of *respondeat superior. See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 n.7 (1978). Bloom also fails to state a failure to protect claim, as he has provided no evidence that the paint crew working in the "honor pod" in which he lived posed a substantial risk of serious harm, or that defendants Edmonds and Davis were aware of and disregarded that risk. Here, Bloom's claim stems from his allegation that the weapon found behind his locker was planted there by another inmate while he was away from his cell. However, Bloom has not alleged that this particular paint crew, or any other visitor who could have allegedly planted the weapon, had a history of harming other inmates, or that the defendants were aware of and disregarded a substantial risk to inmate harm. Bloom's citation to *Krein v. Norris*, 309 F.3d 487 (8th Cir. 2002), in which a prisoner who had his jaw broken successfully brought an Eight Amendment claim where there was one guard for 150 inmates, as well as a known substantial risk that an attack would occur given the high level of violence and understaffing preceding the incident, *see id.* at 491, only highlights the degree to which Bloom's claim falls short on both the objective and subjective prongs of the test.

Bloom also fails to allege any objectively serious deprivation of a basic human need. The Supreme Court is clear that extreme deprivations are required to make out a conditions-of-

confinement claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("[B]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation.") (citations and internal quotation marks omitted). While the food, showers, clothes, and noise levels that Bloom describes at Sussex may have been a "severe alteration" from the conditions he had previously experienced living at Buckingham, they do not approach the type of objective allegations needed to sustain an Eight Amendment claim.

Bloom did suffer a serious medical episode that required hospitalization following his transfer from Sussex to Buckingham. However, Bloom has failed to provide sufficient evidence that any significant physical or emotional injury resulted from the conditions of his confinement. *See Strickler*, 989 F.2d at 1381 (requiring an inmate to produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions to succeed on an Eighth Amendment claim). Bloom's medical episode occurred two days after his transfer to Augusta, and he was immediately brought to a hospital, where he received treatment over the course of three days. Nurse K. Kellogg, the nursing supervisor at Augusta, submitted an affidavit describing the events, as reflected in Bloom's medical records. Nurse Kellogg indicates that a Mallory-Weiss tear, which Bloom experienced, is caused over a longer period of time due to any condition that leads to violent or lengthy coughing, vomiting, or increased abdominal pressure. *See* Docket No. 27-3. Also Bloom acknowledges that his ulcers developed over a long period of time ("from September 9, 2009 through June 3, 2011"), and cites the "high levels of extreme stress and emotional distress" he experienced related to his appeals process and his

confinement generally, including the transfer from Sussex to Augusta, as potential causes. *See* Pl.'s Reply in Opp. 23.[4] Furthermore, Bloom makes no allegations regarding the medical treatment he received at the University of Virginia hospital. Ultimately, however, I find that Bloom has failed to demonstrate a causal relationship between his transfer to Augusta, or any specific condition of his confinement, and his medical episode in order to set forth an Eight Amendment Claim.

Lastly, Bloom alleges that defendant Edmonds violated his rights under the Eight Amendment by allegedly failing to afford him certain procedural protections during his hearing, and then affirming the hearing officer's decision in his case. Bloom also alleges that defendants Everett and Vargo kept him at Sussex "longer than was reasonably necessary." Again, Bloom cannot show how any of the defendants' actions put him at risk of serious harm, or that the defendants acted with any deliberate indifference to a known risk. Thus, Bloom fails to state a claim for a violation of the Eighth Amendment, and defendants' motion for summary judgment must be granted regarding these claims.

### III. BLOOM'S FOURTEENTH AMENDMENT CLAIMS

Regarding claims brought under the Fourteenth Amendment, Bloom alleges that defendant Davis violated his right to due process by failing to conduct a thorough investigation regarding his weapon charge (claim 8). Specifically, Bloom states that Davis refused his request to obtain fingerprints from the envelope and the locker where the weapon was found, directed the investigating officer to interview only residents of the honor pod and not the paint crew inmates,

---

[4] Bloom also claims that the confiscation of certain personal property items upon his arrival to Augusta contributed to his illness. Bloom filed a separate 1983 lawsuit regarding the loss of those items, and this medical episode. By memorandum opinion and order dated March 25, 2013, I entered summary judgment against plaintiff, finding that he failed to allege an Eighth Amendment claim. *See Bloom v. Jennings*, Case No. 7:12-cv-57, 2013 WL 1249030 (W.D. Va. Mar. 26, 2013)

8

and failed to sufficiently investigate the "implausibility" of the snitch note, *i.e.*, that the "snitch" would not have been able to see into Bloom's cell as claimed. Bloom also alleges that defendant McNeely violated his due process rights by failing to follow rules, policies, and procedures for prison disciplinary proceedings, and wrongfully convicting him of a weapons charge when the evidence did not support his conviction (claims 10, 11). Bloom claims that defendant Edmonds, by affirming the conviction on appeal, subjected him to the loss of personal property, inmate wages, and personal savings (claims 15, 16). Lastly, Bloom alleges that defendants Everett and Vargo also deprived him of his personal property (claim 17).

### A. Liberty Interest

To prevail on a due process claim, an inmate must demonstrate that he was deprived of life, liberty, or property by governmental action. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). When the punishment does not enhance the original sentence, protected interests will be generally limited to freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest).

Bloom has failed to show that the defendants' actions enhanced his sentence in such a way as to implicate a protected liberty interest. *See, e.g.*, *Beverati*, 120 F.3d at 502. Bloom has not alleged that he lost any good-time credits as a result of the disciplinary action, *see Edwards v. Balisok*, 520 U.S. 641, 648 (1997), or that his disciplinary conviction (now expunged) resulted in an increased sentence or conditions of confinement that were atypical and/or a significant

9

hardship in relation to ordinary prison life.[5] Instead, Bloom cites his transfer to a higher security prison, and the loss of his prison job and wages. However, inmates have no protected liberty interest in being housed in any particular prison, or in a prison with less-restrictive conditions. *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons."). Moreover, the Fourth Circuit has found that prisoners have no entitlement to, or protected liberty interest in, prison employment. *See Altizer v. Paderick*, 569 F.2d 812 (4th Cir. 1978) (work assignments are generally within the discretion of the prison administrator); *Alley v. Angelone*, 962 F. Supp. 827, 834 (E.D. Va. 1997) (prisoner did not have a protected interest in continued employment). *See also O'Bar v. Pinion*, 953 F.2d 74, 85-86 (4th Cir. 1991) (removing inmate from work release program did not violate his constitutional rights).

Thus, as Bloom fails to demonstrate that his disciplinary conviction implicated a protected liberty interest, or that his punishment resulted in an atypical hardship, defendants' motion for summary judgment regarding his claim must be granted. In any case, it appears that Bloom was afforded proper process regarding the hearing in his case: he received advanced notice of his charge, and his hearing date; he was provided with the opportunity to request witnesses, and defendants permitted two witnesses deemed to have relevant information for the hearing; Bloom was given the opportunity to testify and ask questions at his hearing; and he was given a copy of the decision, and the reasons for that decision. *See generally Wolff v.*

---

[5] Though Bloom does state in Claim 12 that he was forced to endure "an atypical and significant hardship" while at Sussex, he does not provide any supporting details, and that characterization appears to be in comparison to the "ordinary instances of the prison life [he] had previously experienced while at Buckingham Correctional Center." *See* Compl. at ¶ 92. It is also worth noting that, while Bloom alleges that his conviction postponed his parole hearing until the following year, *see id.* at ¶ 102, inmates do not have a liberty interest in parole release or the procedures that govern parole determination under Virginia law. *See Hill v. Jackson*, 64 F.3d 163, 171 (4th Cir. 1995). As stated, Bloom remains incarcerated at Augusta.

*McDonnell*, 418 U.S. 539, 566 (1974).[6]

### B. Property Interest

Bloom's claim regarding the loss of his personal property as a result of his transfers between Buckingham, Sussex, and Augusta does not rise to the level of a constitutional violation either. "The guarantee of due process has never been understood to mean that the State must guarantee due care on the part of its officials." *Davidson v. Cannon*, 474 U.S. 344, 348 (1986). Furthermore, deprivations of personal property that are random unauthorized acts of state officials do not offend due process if due process is satisfied by adequate post-deprivation state remedies. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986). For each of the three instances that he alleges he was deprived of his property, Bloom does not state how or why his property was lost or taken.[7] Nor does Bloom provide any details regarding the type of post-deprivation remedy, if any, he actively pursued.

Ultimately, section 1983 was intended to vindicate federal rights, not tort claims for which there are adequate state law remedies. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Tucker v. Duncan*, 499 F.2d 963, 965 n.1 (4th Cir. 1974)). At this point, to the extent that Bloom has any claim for the destruction of his personal property it sounds in tort, and the Virginia Tort Claims Act and Virginia tort law provide an adequate remedy. *Wadhams v. Procunier*, 772 F.2d 75, 77-78 (4th Cir. 1985).

---

[6] While Bloom disagrees with their decision, prison officials have the discretion to refuse witness requests, and to limit access sought for the purpose of collecting statements or compiling other documentary evidence. *See Wolf*, 418 U.S. at 566.

[7] Plaintiff does add that in addition to the property loss that he discovered upon his arrival to Sussex, certain compact discs and books were destroyed when stored with an open bag of coffee, torn bags of oatmeal, and coffee creamers. *See* Compl. at ¶ 57.

11

## C. Equal Protection

Bloom claims that McNeely's denial of certain staff witnesses at his disciplinary hearing violated his right to equal protection under the Fourteenth Amendment. Bloom argues that McNeely violated his equal protection rights by permitting defendant Davis to offer testimony regarding Bloom's character, but then refusing to allow the testimony of other staff witnesses, which Bloom alleges would have been relevant and supported his innocence.[8] Bloom also claims that defendants Everett and Vargo, by failing to restore his Level III security status after his conviction was expunged, violated his right to equal protection under the Fourteenth Amendment. Bloom alleges that Vargo justified her decision on the basis that he had not yet completed 20 years of his life sentence, though Bloom states he had already been classified as security Level III for seven years prior.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To succeed on his claim, Bloom "'must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.' If he makes this showing, 'the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.'" *Veney v. Wyche*, 293 F.3d 726, 730-31 (4th Cir. 2002) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). In a prison context, the appropriate level of scrutiny is "whether the disparate treatment is 'reasonably related to [any] legitimate penological interests.'" *Veney*, 293 F.3d at 732 (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

---

[8] Again, prison officials may refuse witness requests when such requests are deemed irrelevant, unnecessary, or present a hazard in an individual case. *Wolff*, 418 U.S. at 566.

Bloom does not provide any evidence that these defendants treated him differently from other similarly situated inmates, or that they purposefully discriminated against him. Instead, Bloom contends that he "need not necessarily have to identify a class of similarly situated individuals," and submits that "the treatment he received was not consistent with the manner in which many other facilities operate their disciplinary hearings." Pl.'s Reply in Opp. 17. It is well established that the failure of prison officials to follow their own established procedures, without more, does not rise to the level of a constitutional violation. *See Riccio v. County of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990). In any case, I find that Bloom's allegations fail to demonstrate that he was treated differently from other inmates with whom he was similarly situated, or that any unequal treatment was the result of intentional or purposeful discrimination. Thus, I will grant defendants' motion for summary judgment as to Bloom's equal protection claims.

### IV.   BLOOM'S EX POST FACTO CLAIMS

Bloom alleges that defendant McNeely violated the Ex Post Facto clause by altering the rules of evidence in "permitting less and different testimony during the disciplinary hearing." Bloom further alleges that defendant Vargo violated the Ex Post Facto clause by failing to restore his previous security level in a reasonable and timely manner following the expungement of his weapons charge.

The Ex Post Facto Clause of Art. I, § 9, cl. 3, prohibits retroactive punishment of people for acts committed prior to the acts becoming illegal. As incorporated into the Fourteenth Amendment, it prevents a state from 1) charging a defendant with a crime that was not illegal at the time of the crime's commission, 2) aggravating a crime committed prior to enactment of the

law, 3) increasing the punishment for a crime after it has been committed, or 4) changing the rules of evidence with respect to a crime already committed. *See Calder v. Bull*, 3 U.S. 386, 391 (1798). This prohibition is well recognized as applying "only to penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood*, 497 U.S. 37, 41 (1990) (citing *Calder*, 3 U.S. at 390-92). Thus, I find that Bloom has not demonstrated how these defendants violated the Ex Post Facto Clause, and I will grant defendants' motion for summary judgment as to this claim.

## V. CONCLUSION

For the foregoing reasons, I grant the defendants' motion for summary judgment on all of plaintiff's claims, and deny Bloom's motion for summary judgment.

The Clerk of the Court is directed to send copies of this memorandum opinion and the accompanying order to the parties.

**ENTER**: This 3rd day of June, 2013.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE